Now call our second case, number 20-12620 v. Gaines. Do we have all counsel present here? I believe so. Yes, we do. Looks like we do. Okay. Ms. Bessman, you may begin when you're ready. Thank you, Your Honor. Good morning, Your Honor, and may it please the court. I'm Amy Bessman for the appellant, Rita Fox. The sole issue before this court today is whether the Fair Housing Act prohibits sexual harassment as a form of sex-based discrimination. The district court answered this question in the negative. It appreciated that its ruling was in direct contrast with the overwhelming weight of federal authority, in direct contrast with the fellow district courts within this circuit, and the U.S. Department of Housing and Urban Development regulations. The sole basis of the court's ruling was a lack of binding authority from the 11th Circuit. Today, we ask this panel to reverse the district court and hold that Title VIII prohibits sexual harassment as a form of sex-based discrimination. In my brief time, I have three points that I would like to address for the court. The plain language of Title VIII, whether Ms. Fox's sex was a but-for cause of Dana's harassment, and did the Second Amendment complaint please unwelcome sexual harassment. Mr. Bessman, can I ask you just a quick factual question before you get going? Was there in this case ever a formal eviction? The analogy, I suppose, to Title VII adverse employment action, was there something formal that the landlord did to your client? Or really, was the discrimination sort of the sum total of the discrimination, not to minimize it, the harassment itself? Yes, Your Honor, there was a formal eviction. Mr. Gaines served her with a three-day notice for failure to pay rent, which in fact she had paid rent in full for the month of April, and there was an eviction filed with the court. So the reason I ask is this. If there was an eviction, some sort of formal action taken against your client, is it necessary for us in this case to even address the sexual harassment issue? Or can we just go straight to the question of whether there was in fact discrimination because of sex? The discrimination being here an eviction that would not have occurred but for this individual's sex. Can we just sort of bypass the whole sexual harassment thing? I'm just wondering if that question is squarely presented. And it may well be, this only came to me this morning, so it may be a half-baked thought, but I just wondered if there is in fact a formal eviction, if we even really need to get into the sexual harassment thing. Yes, Your Honor, because the eviction is because of the sexual harassment. But for Ms. Fox's sex, being a female, she would not have even been a victim of Mr. Gaines' sexual advances, which would not have led to her being evicted. Dana retaliating against her to evict her. So the eviction itself, the formal eviction, is an offspring coming out of the sexual harassment. Okay, very well. And so when looking at the plain language of Title VIII, it is important to note that neither Title VIII nor Title VII mention sexual harassment. Nevertheless, when it comes to Title VII, this court in Mendoza v. Borden, in an en banc opinion, opined that Title VII's prohibition of sex clearly includes sexual harassment. That the U.S. Supreme Court and this court have long recognized that the phrase, terms, conditions, or privileges of employment invents a congressional intent to strike at the entire spectrum of disparate treatment between men and women in employment, which also includes requiring people to work in a discriminatory, hostile, or abusive environment. Courts have long looked at Title VIII and Title VII and given them light construction. So therefore, the same ruling is appropriate in this context. As whether Ms. Fox's sex was a but-for cause of Dana's discriminatory behavior, despite the district court's ruling on page 6 of its order that no allegations were anywhere in the Second Amendment complaint that Fox was retaliated against because of her sex. This was aired in paragraph 16 and 64 of the Second Amendment complaint. Fox alleged that because of her sex, she was retaliated against. That but for her stopping to acquiesce to the sexual advances, she would not have been retaliated against and she would not have been evicted. In applying the Eleventh Circuit's holding in Henson v. City of Dundee to this case, says to establish that harm alleged was based on sex, Fox must show that but for her sex, she would not have been the object of Dana's harassment. The Housing Umbrella Group, as Amicus Curie wrote in Lempallis, this court stated that when a person sexually harasses another, the court infers that the harasser is making advancements against that victim because that victim is the sex that he or she prefers. In this case, Dana, from day one, asked Ms. Fox for a kiss, that he will reserve the apartment, he's married to a woman. We know that the female gender is what Mr. Gaines prefers. And but for Ms. Fox's sex as a female, she would never have been the object of Dana's harassment and sexual advances. Can I ask you a quick question just about the operation of this and I'm sorry this is so indelicate. But so in light of your argument here and in light of the Ancali case in the Supreme Court about same-sex sexual harassment, where the sex of the victim still has to be a but-for cause of the harassment itself, what about a situation in which the harasser is bisexual and thus doesn't sort of have a determined sexual preference? Does that mean that that person just gets off scot-free? Sorry, I know this is indelicate, but I just wonder about sort of how the but-for test would apply in that scenario. No, Your Honor, that person would not get off scot-free. Because you're looking at the person who's being harassed. Are they being harassed because of their sex? So if the harasser is bisexual, and they would sexually harass a male or sexually harass a female, if the sole basis of that harassment is that person's sex, they will still be liable under the Fair Housing Act. And getting to welcomeness, we believe the most factually similar case to this and that is instructive is Meriture Savings Bank. In that case, a bank employee for four years was sexually harassed by her employer and was terminated. The Supreme Court held that a gravamen of any sexual harassment claim is whether the sexual advances were unwelcome. We plead that in paragraph 64 of our complaint. I see that my time is up. If no further questions, I yield to Mr. Lee. Thank you, Ms. Bessman. Mr. Lee? Good morning, Your Honors. May it please the Court, Jason Lee on behalf of the United States. This Court should vacate the District Court's order and remand for further proceedings. In the order, the District Court appeared to agree that Ms. Fox was subjected to sexual harassment, but nonetheless held that sexual harassment does not violate the Fair Housing Act. That conclusion conflicts with the plaintext of the statute and is inconsistent with the conclusions reached by every other federal appellate court to consider the issue. Whereas here, a plaintiff alleges that a property manager conditioned certain rental terms on her performance of sexual favors and then retaliates by trying to evict her when she refuses to participate in such an arrangement. That plaintiff has stated cognizable sex discrimination and states a claim under the Fair Housing Act. I'd like to start by talking about the broader implications of the District Court's ruling and to answer your question, Judge Newsom. Yes, that issue is squarely presented by the Court and is absolutely necessary for the Court to address. We know that issue is squarely presented, whether or not the Fair Housing Act bars sexual harassment because of the analysis the Court did of other courts that have held that sexual harassment does violate the Fair Housing Act. I guess the reason I asked the question, and again, the thought came to me in the gym this morning, so take it for what it's worth. It just dawned on me that in the normal sexual harassment case, and I went back and looked at Meritor, it seems like the reason that sexual harassment has been deemed discrimination within, say, the context of Title VII is because there's not some reason that it's so intolerable by the harassment that an employee might feel like she has no option but to leave. And so I guess that's the reason I was wondering, was there a formal eviction, or was it just that her life was made so miserable by this guy that she felt like she had to give in and vacate the apartment? I have two responses, Your Honor. First, a formal eviction is not required. Section 3604B simply bars less favorable treatment on the basis of sex, and Section 3617 prohibits interference with Fair Housing Act. There's no need for any actual violation of the Fair Housing Act rights. Second, the reason why this is this is necessary for the Court to address is because regardless of whether or not the Court concludes that Ms. Fox states a claim under the Fair Housing Act, the really troubling and problematic aspect of the District Court's ruling is that it would bar relief not just in close cases, but in obvious, egregious cases of sexual harassment. Cases where everyone involved agrees that the plaintiff has suffered sexual harassment, and under the District Court's interpretation of the statute, that plaintiff would be left without relief. For example, imagine a property manager that goes to a female tenant and says, I find you very attractive, I would like to have sex with you, and if you refuse my advances, I will triple your rent. I will cut off your heat, I will cut off your electricity, and I will cut off your water. Under the District Court's interpretation of the Fair Housing Act, regardless of how egregious the facts are, how egregious the harassment is, there would simply be no claim under the Fair Housing Act, and that cannot be the case. In fact, we know that's not the case because sexual harassment falls under the plain text of the statute. The Fair Housing Act bars discrimination in the terms, privileges, and conditions of rental based on sex. Here, sexual harassment, the harassment itself, conditioning sexual favors on, or conditioning rental benefits on the performance of sexual favors, that's the unfavorable treatment, that's the discrimination. Mr. Lee, let me go back to Judge Newsom's question, and I apologize to Judge Newsom if I'm not getting at what he was trying to get at. I thought what he was asking is, let's suppose we agree that there was a quid pro quo, and that was discrimination. Could we simply reverse on that ground and not reach the sexual harassment claim? And if not, why not? No, the legal basis of the District Court's ruling is that sexual harassment itself, including quid pro quo sexual harassment, does not violate the Fair Housing Act. I think it's very telling that the District Court did not hold, in some circumstances, sexual harassment might violate the statute, but Ms. Fox simply was not subject to sexual harassment as pled. That's not what the District Court held. The District Court instead seemed to accept, yes, she was subject to sexual harassment. I believe on pages one, crossing over to page two, the District Court describes the arrangement as a quid pro quo sexual relationship, so recognizing she was subject to sexual harassment, but simply holds on page five or six, I can't remember which, that type of conduct is simply not actionable. So for that reason, in addition, that legal conclusion regarding sexual harassment and whether or not it violates the statute was also the legal basis on which the District Court dismissed Fox's claims under 3604C and 3617. So that is the legal issue squarely presented before the court. And every source that the court would look at in terms of construing statutory text weighs in favor of finding that sexual harassment does violate the statute. I just explained the textual, under a plain analysis of the text of the statute, sexual harassment is covered. The unanimous conclusion of other federal appellate courts that have considered the issue finds that sexual harassment violates the statute. That interpretation is consistent with the decades long interpretation of analogous, identical statutory text. Let me ask you another question before you sit down. As I understand the government's position, it's that the statute is unambiguous, and therefore we would not afford Chevron deference to the HUD regulation. Is that right? That's correct. There's no need to consider Chevron deference because the text is unambiguous, but we would say to the extent the court disagrees, we would refer to the longstanding interpretation of the Fair Housing Act by HUD, which is entitled to great weight under the Supreme Court's decision in Traficante. So for whatever persuasive skateboard deference it would be entitled to. If there are any other questions, I'm happy to entertain them. Otherwise, we would urge the court to vacate the district court's order. Thank you, Mr. Lee. Mr. Bruckmeier. May it please the court, I represent Digna Gaines and Lucille Gaines. Let me start out by saying there's an unusual fundamental difference of opinion in this case as to what the issue is. By that I mean to say the district court didn't have to deal with the issue per se of whether sexual harassment falls under the FHA or not. The issue on this appeal is really did the district court make an error in dismissing the second amended complaint for failure to state a cause of action and finding that it was impossible for Ms. Fox to state a cause of action. Didn't he didn't he conclude effectively that as a matter of sort of factual allegation she had made out sexual harassment claim and then so the reason for him saying no, no claim that you know failed to state a claim is because he said I get it. I'm on out on a limb here all by myself but sexual harassment isn't actionable. No, I disagree. I think when he was talking about the severity and pervasiveness of whether the allegations were sufficient he found against my position on that. But in particular, if you look at page six of the court's order. He specifically states that he finds this, the allegations don't establish discrimination based on sex. He very clearly says that. So the court said was that it was finding that fundamental predicate of discrimination because of sex was lacking. And he did that for two reasons, I think, and they were very well founded. If you look at the allegations of the complaint. From the day that Ms Fox moved in until March 30 she stopped the relationship. She was engaged in a consensual relationship with Dana games. There's really can't be no question about that. Nor was the trial court confused about that one simply would look at the exhibits attached to the complaint. And you can clearly see that for a four year period. Ms Fox was not the victim of an unwelcome advanced by Mr. Gaines, but she was a willing participant in the relationship. Let me ask you this. Do you do you even dispute, I suppose that sexual harassment is actionable within the meaning of the Fair Housing Act. You know, that's the question that opposing counsel wants answered, I think that you what's your position as you sit here today. I think that there's a slight difference between harassment and discrimination. I think that if the harassment rises to a particular level, and it's based on one of the protected statuses that could conceivably fall into the category of discrimination and I think there are cases of talk about sexual harassment being sex discrimination, if the animus is sex. Okay, so then I mean clearly the district court disagree with what you just said the district court said, you know, I find as a matter of law, sexual harassment is not cognizant, not actionable within the meaning of the Fair Housing Act. And that was a major premise of his conclusion, why wouldn't we just correct that misimpression and send it back to him you might well win on. But but why wouldn't we just correct the misimpression and let him do it under the right standard. Well, I, with all due respect, I disagree with that premise. Because I think that the fundamental predicate for the courts ruling was not on that basis and I think a lot of what the court said about that was just dicta, if you look at page six. I'm sorry page nine of the court order. The judge read rather wrote, but reading Fox's allegations as literal as liberally as possible. She has not and she cannot allege that Dana's behavior constituted discrimination against her on the basis of sex. And I think the judge said that because for the first four years of the relationship was consent consensual, and it was welcome advancements. And if you look very carefully at the second amended complaint. After they had their falling out paragraph 62 and 63 of the second amended complaint. The plaintiff herself admits and alleges, quote, Miss Fox will not have been subjected to this hostile environment. If she never ended the relationship with defendant games paragraph 63, the same thing, but for Miss Fox ending the relationship. And I think what the court was saying that after March 30 any retaliation is alleged by Miss Fox according to her own admissions wasn't because of her sex. It was because the relationship ended. And in my brief I cite to a case from the 11th circuit Joseph sucker as you see car versus the day county school board very similar facts. And there's a finding of no discrimination. The other thing that I think is particularly telling is that if you look at the complaint. There are no ultimate factual allegations that after March 30, there was anything said or done by Mr. had sex with him. He was willing to not evict her. And given the fact that on April 14. Miss Fox had gone to Mr. Gaines his wife and told her about their illicit adulterous relationship for the last three years. You can understand in part, at least from that point forward. Why Mr. Gaines would want her evicted and gone. Now you've asked a couple of questions, Judge Newsome about the eviction. And the answers are found in paragraphs 52 and 53 of the Second Amendment complaint. In paragraph 52, Miss Fox states that she entered into an agreement that she would terminate her lease. I get that I'm not really sure that it helps you. To me it just, it just frames the issue if there was a formal eviction I was wondering aloud whether or not we needed to go down the sexual harassment mode or instead whether we could go straight to what is the sort of analog to an adverse employment action, like a tangible action that your client took against her. If in fact there was no formal eviction, then I just think we're back in sexual harassment land, because your client made her so miserable that she felt compelled to enter into this so called voluntary agreement to vacate the premises will bear in mind again for the last for the first four years of what the plaintiff claims was sexual harassment. She was willingly engaged in a relationship with him. That was not unwelcome. And which is not discriminatory. She did it willingly, and her, and her exhibits to the complaint are clear and unequivocal point of fact judge for March 30. I think it's 2018. A text with Mr. Gaines says, even then, something about when you're serious come back to me. Even at that point, she was interested in having a relationship with him, and was telling him that as long as he was serious about it, which I take me leaving his wife and going with her. So, at that point, I think that's a demarcation point in my mind, because before that it's all welcome, and it's consensual. This is why I said in my conversation with you earlier that I think you know on remand you might well win, but I don't think you can read the district courts order and just cast aside his very candid confession that he was going to hold, contrary to the great weight of authority that sexual harassment is not actionable under Fair Housing Act. I don't think we can just sort of whistle past that graveyard he said it he meant it. And so why not just correct that send it back and again you may win sort of when the rubber meets the road, because I think in my opinion what the judge said was really addicted because the end of the day, is determination that the discrimination if it if it existed was not based on sex vitiates any arguments about whether sexual harassment was or wasn't, and as an example, if the trial court found that sexual harassment is a form of sex discrimination under the FHA, but the animus for the conduct was not sex, and there's no claim under the FHA, and given the fact that the trial court found the animals on the conduct was not based on sex. Then I think that the, that the courts, addressing the Noah decision and sexual harassment constitutes dicta, it's not particularly relevant to go back to counsel but the problem that I'm having with your argument is the basic premise about what the district court actually did. You suggest that the district court statement that sexual harassment, whether it be pervasive or quid pro quo does not state a claim under the FHA. I read the district court to say the following. On page four, he makes it abundantly clear that he's rejecting your argument that the allegations were not sufficient to reach the elevated level of harassment required in this 11th circuit. He writes, Dana argues facts has not pled sufficient allegations to reach the elevated level of harassment required in the 11th circuit. That is to say, he argues Fox complaint does not allege pervasive sexual harassment, or more specifically quote a pattern of harassment. He relies principally on to out of circuit cases, the court disagrees as a factual matter, Fox's allegations are pled well beyond what is required to withstand a motion to dismiss. She has sufficiently pled that once she ended the sexual relationship. The defendants started serving her with fraudulent notices for non payment of rent and threats of eviction, among all, among other things, ultimately terminating her lease, the court Even under our society's expanding understanding of the term sex, citing to the recent Supreme Court case in Boston, there is no reasonable discernible way of understanding it as if we're talking about the coverage in the statute as including retaliation for ending a physical sexual relationship, whether it be our traditional understanding, male or female sexual orientation or sexual identity, the allegations that defendant reiterated against Fox, because she no longer wanted to engage in a sexual relationship is not an allegation of discrimination on the basis of sex. There are no allegations anywhere in the Second Amendment complaint that Dana's retaliation on against Fox was because she was a female, or because of her sexual orientation, or because of her sexual identity. The allegations are clear. He retaliated because she ended the sexual relationship with him. I do not know how to read this as anything other than a district court flatly holding that a claim for that's right, or that's wrong. But I don't know how we can avoid meeting that head on and addressing. What have I missed about the district courts reasoning here. Well, I read the district courts opinion is saying, as you read it, I interpreted a bit differently that she ended the sexual relationship. That's why he sued her that they had an interpersonal relationship that ended acrimony normally follows that kind of an event that followed it in this case and he wasn't discriminating against her because she's a woman. He was discriminating against her because they had a relationship that deteriorated much like in the sucker case from the 11th Circuit, given the fact that you and Judge Marcus have read the very same passage of the very same opinions mean very different things. I returned to my question, why shouldn't we correct any misimpression that might result from the district courts opinion to suggest that sexual harassment is per se not actionable, send it back, and then he might read, he might say, the 11th Circuit is stocked with a bunch of fools they misread my opinion what I meant was that the, the relationship ended acrimony followed and eviction or the constructive addiction was based on that. Well, only because I think that his opinion that's what he intended to say right here and that's what he said that the reason for the discrimination was not because she's a woman's because the relationship ended badly just like in soccer, which is pretty their sex it's because their relationship ended. And when you look at the complaint there are no allegations of fact that after their relationship ended the Dana Gaines in any way shape or form, communicated that a continuing provision of sexual favors would result in her being allowed to stay there. Let me ask the question in a slightly different way if I could count. Assume argue window that I properly read the district court to hold sexual harassment or quid pro quo sexual harassment cannot state a claim under the FHA. In your view, would that not be legal error. I think that the FHA is clear. I think that if harassment is is motivated by an animus of sex or another protected status that it would constitute sex discrimination. So if sexual harassment, in my opinion is no different than any other conduct is prohibited. If it's motivated on because of an animus against or protected status, it falls within the parameters of the FHA. Okay. So it sounds to me then like we have raging agreement between you Mr Lee and Miss best man that sexual harassment is actionable under the FHA, if it is motivated but you know but for the but for cause of the harassment is sex. And you're only quarrel now anymore. This is significantly I think shrunk the area of dispute. Your only quarrel is that the district court really didn't mean that sexual harassment is per se outside the statute, only that the sexual harassment that occurred here was not because of the sex of the tenant. Correct. I think the court trial court tried to make it very clear that it was finding that the motivation for the conduct was not based on sex or gender was based on the acrimony. And that's not a protected status. And that the allegations of the complaint established it. I think the court relied on that as well. The allegation said it was because of the ending of the relationship. And there were no allegations that after it ended. There was any further communication of an intent to provide a quid pro quo for sex. Let me ask you a slightly different question. Again, going back to the district court opinion. What do you suppose the district court meant here. When it said on page six. The court appreciates this ruling is in direct contrast with Noah, a case decided by this district, not too long ago, the court further appreciates that this ruling is in direct contrast with what Noah said is the overwhelming weight of federal authority, citing 16 circuit and district court decision supporting that. I think the judge was addressing, as he did on page four and as your honor read it earlier, the elevated level required by the 11th circuit, but went on to find, which I think is the underlying predicate for the decision that sex is not the animus for the the exhibits the complaint that sex was not the motivating factor for the actions that are being complained of. And therefore there's no cause of action under the FHA. If he found that there was the necessary animus based on sex. Then I can see the court then having gone into the issue of whether or not the allegations rose to the appropriate level. But does it state a claim under the FHA for a landlord to tell a would be tenant. I will rent you this apartment. If you have sex with me. But if you do not. I will not rent you the apartment. Would that state a claim under the FHA in your view. As you phrased it, I think it would your honor. In this case where it was not an unwelcome approach to her. It would not. And by virtue of the fact she engaged in that four year relationship, and the emails attached or text attached to the complaint. It wouldn't state a claim under those facts because it wasn't unwelcome at all. Is that the basis for the district court opinion that it was not unwelcome that this consensual relationship and therefore, this doesn't fall within the ambit of the FHA. I think that is what the district court found in stark words like that, but he does talk about the fact that you know there's no Dana's behavior. She cannot allege that Dana's behavior constituted discrimination against her on the basis of sex I think is a recognition by the trial court that that's because they were involved in this relationship and then court goes on to say, she herself says, This is all because the relationship ended. The actions complained of were because the relationship ended the actions weren't because she would not agree to it. She did agree to it. What about the allegation in this case on the front end of the, the facts as they are laid out in the Second Amendment complaint, whereby the plaintiff asserts that he told me he would hold the apartment for me, but only if I gave him a kiss. Right, that constitutes sexual harassment as you see it in the FHA. If it if it ended there. That's the very first allegation that she when she walked in the door she liked the apartment she wanted the apartment. In many ways, it suited her needs and price. He says, I'll hold it for you, but only if you give me a kiss. If she rejected that, and it ended there. I would agree with your honor, whether she rejected it or accepted it. My question is whether or not that states a claim under the FHA for sexual harassment, and whether that is something that falls within the ambit of because or on account of sex. I think it wouldn't be repetitive and pervasive enough, but together with other conduct, it might be that in of itself I don't think would be sufficient. Thank you very much. You're welcome. Thank you all. Thank you, Mr. Eastman you may make your rebuttal. It's okay, your honor. Thank you. Judge Newsome to your point, you're correct and and Judge Marcus is that the district court below was asking for guidance that the 11th Circuit has not spoken on this issue despite the overwhelming weight of federal authority, and that if the court was to correct this and state that sexual harassment is actionable to pursuant to the Fair Housing Act, and send it back, and then we can have an opportunity to argue whether the conduct was welcome or unwelcome, which is a determination for the trier of fact, and not at the pleading phase of a motion to dismiss. Also to address going back to your question, Judge Newsome, as to whether, was it the eviction that triggers the sexual harassment here really for hostile environment claim regulations 100.602 states, a hostile environment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with the use or enjoyment of a dwelling or the conditions or privileges. It doesn't have to be an actual eviction. In this case, yeah, yeah, don't misunderstand me I totally agree with you about that. I was just saying like, if there was an eviction, then maybe the cause of action sort of like turns on the eviction, since there wasn't really an eviction here I think the cause of action does sound and sexual harassment sort of hostile environment that was effectively like a constructive eviction, it's all good. I just wanted to clarify the factual issue. Correct. Thank you. In that regards the landlord's representative like Mr. Gaines should not be permitted to include sex as a condition of housing. Moreover, my client Miss Fox is entitled to be free from sexual harassment in her home. This is what the Fair Housing Act prohibits, and this is what we are asking this panel to hold today. Thank you for your time, Your Honors. Thank you counsel.